## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

KAY CONLEY,

        Plaintiff,

   vs.                                    **Case No. 07-4136-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

_____

### MEMORANDUM AND ORDER

Plaintiff has filed applications for social security disability benefits and supplemental security income benefits. Plaintiff alleges an onset date of November 2, 2003. The application was denied by defendant on the basis of the April 11, 2006 opinion of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

I.  STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  <u>Glenn</u>, 21 F.3d at 984.

II.  ALJ DECISION (Tr. 22-36).

There is a five-step evaluation process followed in these cases.  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's applications should be denied on the basis of the fifth or last step of the evaluation process.  The ALJ decided that when plaintiff was abstinent of drugs and alcohol she maintained the residual functional capacity to perform a limited range of light work which existed in the

economy.

More specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. He determined that plaintiff has the following physical impairments: mild lumbar degenerative joint disease; cervical degenerative disc disease; neuropathy of the feet; history of right knee fracture; history of thoracic surgery and right rotator cuff tear repair disorder. He also found that plaintiff suffered from "chronic ethanol abuse, depression and anxiety disorders exacerbated by substance addiction, [and] dependent and borderline personality traits." (Tr. 35).

The ALJ decided that plaintiff is "disabled" as defined by the Social Security Act, "but that her alcohol and drug abuse is a material factor in her disability." (Tr. 35). He considered plaintiff's statements concerning her impairments and their impact on her ability to work to be "not entirely credible." (Tr. 35).

According to the ALJ, if plaintiff stopped using alcohol and drugs, she retained the RFC:

> to perform the exertional demands of a limited range of light work, or work which requires maximum lifting/carrying and push/pull of 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and walk six hours during the work day and sit six hours during the work day. [Plaintiff] cannot reach overhead, crawl, or climb ladders or ropes. She cannot do repetitious bending or twisting of the neck and only occasionally climb stairs, balance, stoop, kneel or crouch. Based upon her mental impairments including depression and anxiety [plaintiff] is moderately limited in her ability to understand, remember, and carry out detailed

instructions, and to maintain attention and concentration for extended periods. [Plaintiff's] mental and emotional functional limitations that would remain if [plaintiff] stopped using alcohol and drugs rise to the level that: 1) there are no restrictions of activities of daily living, 2) there are no difficulties in maintaining social function, 3) deficiencies of concentration, persistence or pace are moderate, and 4) there are no episodes of deterioration of extended duration. [Plaintiff] can perform unskilled work.

(Tr. 35-36).

The ALJ decided that plaintiff was not able to perform her past relevant work, but that without plaintiff's substance addiction disorder she could perform such jobs as a photocopy operator, microfilm mounter, cashier, wire wrapper and optical goods assembler. This conclusion was based upon the testimony of a vocational expert.

III. PLAINTIFF'S BACKGROUND

Plaintiff was born in 1956. She has a high school education and an average intelligence. She has a substantial work history. The disability onset date she alleges (November 2, 2003) coincides with the date when she was injured falling off a horse and was kicked in the head by the horse. Plaintiff suffered a concussion, bruised ribs and a sore back from this incident. Plaintiff has a history of a fractured back and a right knee fracture. On November 23, 2004, plaintiff had rotator cuff surgery on her right shoulder. Plaintiff has a considerable history of depression as well as alcohol and substance abuse. But, the focus of the arguments in this matter concerns her physical condition and ability to work

4

when she is sober.

IV.   ARGUMENTS

    A.   <u>Treating Physician - Dr. Chillal</u>

    Plaintiff's first argument is that the ALJ failed to properly consider the treating physician's medical opinions.   Plaintiff is referring to the opinions of Dr. Pandurang Chillal.

    1.   <u>ALJ's criticism of Dr. Chillal</u>

    The ALJ made the following comments with reference to Dr. Chillal:

> Pandurang Chillal, M.D. began treating [plaintiff] November 2004.   Progress notes dated March 1, 2005 indicate [plaintiff's] right shoulder pain and range of motion had improved with physical therapy, "and the right shoulder is feeling whole lot better." [Plaintiff] was noted to be feeling somewhat better, but still had difficulty with sleep, painful feet, and some episodes of lightheadedness and dizziness.   The doctor diagnosed a stable right knee fracture, right rotator cuff repair, history of cerebral concussion and dizziness and depression, and improved hypokalemia.
> . . . .
> A treating physician's medical opinion of the nature and severity of a claimant's impairment is given controlling weight if it is well supported.   20 CFR 404.1527(d) and 416.927.   In this case Dr. Pandurang Chillal, M.D. completed a medical source opinion of residual functional capacity, dated December 14, 2004.   The doctor opined that [plaintiff] was only occasional[ly] able to sit and infrequently able to stand or walk with an ability to frequently lift/carry 10 pounds.   Dr. Chillal felt [plaintiff] could never use her right arm for reaching, pushing, and pulling, and that pain and fatigue limited her concentration. He also observed that [plaintiff] was markedly limited in her ability to maintain attention and concentration for extended periods to perform both simple and detailed tasks, and she was moderately limited in her ability to adhere to a schedule and maintain regular attendance.   The doctor also related in a note that [plaintiff] had a history of substance abuse which was

5

not the cause of her depression and anxiety or her
limitations, and that by themselves [plaintiff's]
depression and anxiety limited [plaintiff] as noted in
the medical source statement. . .

This opinion is not supported by well-documented medical
evidence, treatment records or statements of [plaintiff]
regarding [plaintiff's] daily activities and mental
abilities (SSR 96-2p). Dr. Chillal's opinions are not
supported by citation to any clinical or laboratory
tests. No evidence of training or expertise to make the
analysis are present. The undersigned gives little
weight to the opinions of this physician. [Plaintiff]
began seeing the doctor on November 12, 2004 for the
express purpose of obtaining the residual function
capacity evaluation, thus there is no established
treating record or relationship upon which the doctor can
make observations. The doctor's statements are composed
entirely of conclusions that are not explained and lack
of explanation of how impairments affect the ability to
function. The severity of the functional limitations is
unsupported and contradicted by [plaintiff's] medical
record which reflects improvement in functioning when
[plaintiff] is abstinent from drugs and alcohol.

(Tr. 26 & 33).

### 2. Plaintiff's criticism and defendant's defense of the ALJ's consideration of Dr. Chillal

Plaintiff argues that the ALJ incorrectly considered Dr.
Chillal's opinions because, first, he was wrong in stating that
plaintiff began seeing Dr. Chillal for the purpose of obtaining an
RFC evaluation. Plaintiff makes reference to a document in the
administrative record which states that plaintiff "has recently
changed health care providers to Dr. Chillal due to a change in the
MediKan program." (Tr. 443).

Second, plaintiff asserts that the ALJ was wrong in commenting
that "there is no established treating record or relationship upon

which the doctor can make observations." (Tr. 33).   Plaintiff claims that the record shows that Dr. Chillal treated and examined plaintiff on several occasions.   During these visits, according to plaintiff, Dr. Chillal observed back pain, spasms, tenderness, burning in the feet, painful shoulder and decreased range of motion.   Plaintiff further alleges that Dr. Chillal diagnosed plaintiff with lumbar vertebral fracture, peripheral neuropathy, degenerative disease, and painful rotator cuff.

Plaintiff suggests that the ALJ did not consider all of the records from Dr. Chillal in rendering his decision.

Defendant responds that Dr. Chillal could not be considered a "treating source" at the time of the December 14, 2004 RFC opinion because he had not seen plaintiff a sufficient number of times to develop a treating physician relationship.   Defendant further responds that Dr. Chillal's later opinions were not well-supported by clinical or other diagnostic tests or techniques and otherwise were not consistent with the record.

In reply, plaintiff contends that defendant overlooks some portions of Dr. Chillal's records which are favorable to plaintiff's claim.   Plaintiff also makes reference to supporting comments from Dr. Kent (regarding limping and pain in plaintiff's feet as of March 2005 - Tr. 448) and Dr. Chamberlin (traumatic arthralgias with pain in multiple regions, including the shoulder and back as of April 2004 - Tr. 220).

3.   <u>Standards for evaluating treating physicians</u>

The Tenth Circuit summarized the standards for evaluating a treating physician's opinion in <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762-63 (10th Cir. 2003):

> Under Social Security Administration regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2).  An ALJ may disregard a treating physician's opinion, however, if it is not so supported. <u>Castellano v. Sec'y of Health & Human Servs.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994).  In all cases, the regulations require that the ALJ "give good reasons" in the notice of determination or opinion for the weight that is given the treating physician's opinion.  20 C.F.R. § 416.927(d)(2).
> . . . .
> A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source.
> . . . .
> In determining whether a physician's opinion is entitled to controlling weight, the Social Security Administration regulations look to the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship."  20 C.F.R. § 416.927(d)(2)(i),(ii).  A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." <u>Id</u>.

4.   Court's consideration of Dr. Chillal's records and
the parties' arguments

In this case, the ALJ rejected the opinion of Dr. Chillal in
part because plaintiff "began seeing the doctor on November 12,
2004 for the express purpose of obtaining the residual function
capacity evaluation, thus there is no established treating record
or relationship upon which the doctor can make observations." (Tr.
33).  The court disagrees with the first half of this statement.
As plaintiff mentioned, the record indicates that plaintiff began
seeing Dr. Chillal due to a change in the MediKan program, not for
the purpose of obtaining an RFC evaluation. (Tr. 443).  Still, the
RFC evaluation produced by Dr. Chillal on December 14, 2004 may be
given diminished weight because of the absence of a lengthy
treatment record.   At that time, Dr. Chillal had only seen
plaintiff once or twice.  This justifiable criticism, however, does
not extend as powerfully to the RFC evaluations performed by Dr.
Chillal on May 18, 2005 and January 10, 2006.  These evaluations,
which place significantly greater limitations upon plaintiff's
capacity to sit, stand and walk than were determined by the ALJ,
are not mentioned in the ALJ's decision.

The ALJ addressed and dismissed Dr. Chillal's opinions in
general on the grounds that they were not supported by well-
documented medical evidence, treatment records, statements by
plaintiff or by citations to clinical or laboratory tests.  (Tr.
33).  So, it is important to review Dr. Chillal's records and

9

plaintiff's statements.

Dr. Chillal first saw plaintiff on November 11, 2004.  He examined plaintiff and noted significant pain in plaintiff's right shoulder, tenderness in her right knee, and a left wrist which was somewhat painful. (Tr. 438).   He found no lumbar spasm or tenderness. (Tr. 438).  He described plaintiff as suffering from: multiple traumas; right shoulder rotator[] cuff tear; right knee fracture; three broken vertebrae; bruised right rib; cerebral concussion; past history of alcoholism and endogenous depression. (Tr. 438).   When Dr. Chillal completed the residual functional capacity form on December 14, 2004 he found that plaintiff could occasionally sit; infrequently stand or walk; frequently lift or carry less than 10 pounds; never use her right arm for reaching, pushing or pulling; frequently use her left arm for such activities; and frequently or continuously use her hands. (Tr. 434) Of course, this form was completed three weeks after plaintiff's rotator cuff surgery.   Dr. Chillal said these findings were supported by the following medical findings:  right rotator cuff repair; left wrist degenerative changes; right knee fracture; lumbar vertebral compression fracture from the horse fall; and cerebral concussion. (Tr. 435).

On January 10, 2005 plaintiff was seen by Dr. Chillal.  Among other complaints, plaintiff said she had chronic back pains, she could not walk or stand, and that her feet were burning and feeling

pain. (Tr. 464). Upon examination, Dr. Chillal recorded that plaintiff had a slightly wobbly gait. (Tr. 464).  He diagnosed plaintiff with:  possible peripheral neuropathy; chronic low back pain related to her past motor vehicle accident; major endogenous depression; rotator cuff repair with persistent pain; chronic disability; and right knee fracture. (Tr. 464).

On February 4, 2005 plaintiff saw Dr. Chillal and said that she had chronic lower back pain, knee pain, ankle pain and pain in her right shoulder.  She also complained of peripheral neuropathy. Dr. Chillal found moderate degenerative changes in her hands, knees and ankles.  He determined that plaintiff had:  a history of right knee fracture; right shoulder rotator cuff tear with repair; history of three broken vertebrae; history of cerebral concussion and endogenous depression with history of ethanol abuse. (Tr. 463).

On March 1, 2005 Dr. Chillal wrote that plaintiff was feeling somewhat better and that her right shoulder was feeling a "whole lot" better.  However, her feet were hurting.  There was no mention of back pain. (Tr. 473).

On March 10, 2005 Dr. Chillal stated that plaintiff:

> still has extreme difficulty in walking and doing chores because of the right knee [fracture], right shoulder rotator cuff tear and also has major endogenous depression.  Since her [motor vehicle accident] she has a lot of back pains and peripheral neuropathy in the lower limbs and burning feet syndrome noted.

(Tr. 472).  His examination noted a sore right knee, lower lumbar spasm and tenderness, and difficult range of motions. (Tr. 472).

11

He described plaintiff as having chronic pain syndrome and disability. (Tr. 472).

One week later, Dr. Chillal said that plaintiff "has done fairly well.  Still has a lot of back pain, right shoulder pain and major endogenous depression." (Tr. 471).

On April 27, 2005 Dr. Chillal indicated that plaintiff had depression and fibromyalgia syndrome. (Tr. 469).  Upon examination, he noted significant tenderness in plaintiff's neck, lower back and hip areas, and right knee.

On May 18, 2005 Dr. Chillal completed another RFC form finding that plaintiff could sit, stand or walk "infrequently," meaning one hour or less. (Tr. 467).  He further found that plaintiff could occasionally use her right arm and frequently use her left.  She could also frequently lift or carry 10 pounds.  He said the following medical findings supported his assessment:  right knee fracture; mid thoracic vertebral fractures; cerebral concussion; lower limb peripheral neuropathy and gait difficulty; and right rotator cuff tear with repair with pain. (Tr. 468).

On August 10, 2005 Dr. Chillal saw plaintiff.  He noted complaints of depression, back pain and difficulty in range of motion. (Tr. 482).  Upon examination, he found moderate paralumbar spasm and tenderness with flexion extensions slightly painful. (Tr. 482).  He determined that tendon reflexes in the knees and ankles were normal and that plaintiff's gait was intact. (Tr. 482).

12

He found that plaintiff had:  lumbar disc disease versus spasm versus radiculopathy; major endogenous depression; history of old vertebral fracture; and multiple rib fractures. (Tr. 482).

On January 10, 2006 Dr. Chillal did another RFC assessment. This time he lowered plaintiff's capacity to use her arms or hands to "infrequently"; otherwise the assessment was the same. (Tr. 487).  He stated that the following medical findings supported this assessment:  persistent lower lumbar and neck pain; lower limb radiculopathy; hip and knee degenerative disease; and depression. (Tr. 488).

The ALJ does not explain why plaintiff's statements regarding her daily activities are inconsistent with Dr. Chillal's RFC assessments.  Our review of plaintiff's testimony before the ALJ and her "Activities of Daily Living" form (Tr. 148-151) finds no inconsistency.  The ALJ does not describe what types of tests or medical evidence he would expect to find in support of Dr. Chillal's findings.  There is no dispute apparently that plaintiff has suffered a right knee fracture, a right shoulder rotator cuff tear and repair, and fractured vertebrae, among other injuries.  In addition, the ALJ found that plaintiff had mild lumbar degenerative joint disease, cervical degenerative disc disease and neuropathy of the feet. (Tr. 35).  The ALJ does not specify another doctor's opinion which he finds more convincing than Dr. Chillal's.  It should be noted that back pain, right knee pain and depression are

13

consistently referred to in Dr. Chillal's records of his sessions with plaintiff.  These findings are corroborated in other documents in the administrative record.  For instance, regarding back pain and knee pain, Dr. Bell discusses these problems, as well as depression, after examining plaintiff on August 20, 2004. (Tr. 421-22).  Dr. Chamberlin also makes findings regarding back pain, x-ray evidence of mild and moderate changes in plaintiff's back, as well as "pain in multiple regions." (Tr. 218-221).

In summary, we have carefully reviewed the record.  We will not say that Dr. Chillal's opinions are extensively substantiated with references to tests and examinations and treatment records. For instance, there are references to fibromyalgia and chronic pain syndrome which do not seem well-established.  But, we find that Dr. Chillal's opinions are sufficiently supported in the record that they should not be cast aside by the general commentary of the ALJ. In other words, we find that the ALJ failed to "give good reasons" in his opinion for assigning only little weight to the opinions of Dr. Chillal.

B.  <u>Plaintiff's credibility</u>

Plaintiff's second argument is that the ALJ failed to properly consider plaintiff's credibility.

1.  <u>ALJ's credibility findings</u>

The ALJ made the following comments relating to plaintiff's credibility:

14

Considering the record as a whole, the Administrative Law
Judge finds [plaintiff's] subjective complaints to be not
credible and her impairments to be not as limiting as
stated regarding her back and shoulder pain, neuropathy,
depression and anxiety. [Plaintiff's] allegations
regarding her alcohol use [are] not credible, and her
testimony concerning the limitations of her pain is not
credible.  Her impairments are not likely to cause the
type and degree of symptoms alleged.
. . . .
[Plaintiff] is only partially credible concerning her
physical medical problems, and her substance abuse
has clearly contributed to her limitations.  She is
documented as often non-compliant with medications and
while she takes Zoloft and Zanax for mental problems she
takes no pain medication except for foot neuropathy,
which is inconsistent with allegations of disabling back,
shoulder and joint pain.  Her allegations that she can
only sit for an hour and stand for 10 minutes at a time
are not supported by the record and she demonstrates a
brisk, steady gait.
. . . .
[Plaintiff] alleges she had disabilities which prevent
her from holding a job, but the evidence shows that
[plaintiff's] daily activities demonstrate successful
independent living which is inconsistent with the claims
of disabling impairments. [Plaintiff] told Dr. Mintz on
April 29, 2004 that she is able to do most activities of
daily living, including cooking, cleaning, shopping,
vacuuming, making the beds, and dishwashing a little at
a time.   In a questionnaire dated January 2, 2003,
[plaintiff] related that she is able to take care of her
personal needs, cook meals, do laundry, mop, clean
bathrooms, pay bills, shop for groceries, drive a car,
crochet, attend clubs, visit others, get along with
others, and attend therapy.  This level of activities
demonstrates a level of vigor and an ability to
concentrate and interact with others which is
inconsistent with [plaintiff's] claim that she is unable
to perform any work activity.
. . . .
[Plaintiff's] statements concerning her impairments and
their impact on her ability to work, when drugs and
alcohol are not material contributing factors to her
impairments, are not totally credible in light of the
reports of the treating and examining practitioners,
discrepancies between [plaintiff's] assertions regarding
the severity of her symptoms and limitations and

information contained in the reports regarding medical signs and findings, [plaintiff's] presentation of symptoms at the hearing, and daily activities which are inconsistent with [plaintiff's] allegations of disabling impairments.
. . . .
In analyzing the testimony of [plaintiff] and in light of the evidence of record, the Administrative Law Judge finds that the allegations that [plaintiff] is totally disabled due to her remaining physical and mental impairments alone are not credible. . . . The examiner opined [plaintiff] related adequately to people and was able to understand simple and intermediate instructions with variable concentration capacity.  Dr. Mintz further observed [plaintiff's] potential work functioning would be improved if she was abstinent.  By October 13, 2004, it was noted [plaintiff] was fully off all of her medications and alcohol.  It was observed that while she still had shoulder and back pain she was "doing well . . . feels okay now."
. . . .
[Plaintiff's] statements concerning her impairments and their impact on the ability to work are credible only to the extent that they indicate an inability to engage in activity exceeding her residual functional capacity set forth below. [Plaintiff's] statements concerning her impairments and their impact on her ability to work when drugs and alcohol are not a material factor are not generally credible, and are to be given "little weight." The medical opinions and notes throughout the record weigh against [plaintiff's] allegations of disability. [Plaintiff's] allegations of symptom levels that preclude all types of work are not consistent with the evidence as a whole.   None of the physicians or psychologists involved in [plaintiff's] treatment provided objective findings which would indicate that [plaintiff] was disabled when drug and alcohol abuse was not a material factor.

(Tr. 29-32).

### 2. <u>Plaintiff's and defendant's arguments regarding the ALJ's credibility analysis</u>

Plaintiff argues that the ALJ was incorrect in stating that plaintiff's daily activities demonstrated that her claims of

16

disability were false.   She further asserts that the medical evidence supports the credibility of her claims.

Defendant responds that the ALJ's credibility determination is supported by plaintiff's daily activities, plaintiff's non-compliance with treatment recommendations, plaintiff's failure to take pain medication, and plaintiff's presentation during the hearing before the ALJ.

In her reply, plaintiff again contends that her daily activities support the credibility of her claims and faults the ALJ for failing to ask why plaintiff does not take pain medication.

> 3.   Court's consideration of the ALJ's credibility analysis

The court agrees with plaintiff's contention that the level and type of daily activities consistently described by plaintiff support, rather than detract from, the credibility of her complaints of pain and disability.   "[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain."   Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).   Plaintiff has indicated on more than one occasion that she does various household chores a little bit at a time, that she has help with some chores and with carrying groceries, and that she has few if any hobbies or other activities which demonstrate the endurance to perform gainful employment. (Tr. 149, 230, 447, 475, 517).   We think the record favors plaintiff's argument on this point.   See Clifford v. Apfel, 227

F.3d 863, 872 (7th Cir. 2000) (addressing a somewhat similar
situation in which a claimant's credibility was assessed in light
of her daily activities).

The ALJ asserted that plaintiff's credibility was undermined
by the reports of doctors.  He noted that one doctor (Dr. Bell)
stated on October 13, 2004 that plaintiff was "doing well" and
"feels okay now." (Tr. 412).  The same doctor's notes from the same
visit, however, indicate that plaintiff "continues having back,
neck and shoulder pain." (Tr. 411).  Dr. Bell noted on August 20,
2004 that plaintiff was "really unable to do anything at all right
now" (Tr. 421), and on January 30, 2004 said "[plaintiff] is really
unable to work right now because of her back." (Tr. 210).  The ALJ,
as discussed previously, also improperly discounted the assessments
of Dr. Chillal, which support plaintiff's complaints of pain.  Dr.
Chillal's assessments of plaintiff's RFC are consistent with
plaintiff's complaints of pain.  Dr. Chamberlin noted on February
22, 2003 that plaintiff had "multiple arthralgias," fractured
vertebrae, and that she walked with a limp. (Tr. 339).  Dr. Kent
mentioned that plaintiff walked with a limp. (Tr. 448).  On January
10, 2005 Dr. Chillal mentioned that plaintiff had "gait
difficulty," although on August 10, 2005 he noted that plaintiff's
gait was "intact." (Tr. 464 & 482).

Therefore, there are medical findings and observations which
are consistent with plaintiff's complaints of pain, not to mention

inconsistent with the ALJ's observation of plaintiff having a brisk gait.

Finally, we believe it is reasonable for the ALJ to consider plaintiff's failure to take pain medication in his analysis of plaintiff's credibility. See <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). However, this point loses some trenchancy when there is no discussion of why plaintiff does not take pain medication, whether pain medication has been prescribed, and whether pain medication would be effective. These issues were not developed in the record.

In sum, for the reasons stated above, the court believes the ALJ failed to refer to substantial evidence to support his determination that plaintiff was not fully credible in her claims of impairment.

C.   RFC Assessment

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff contends that the ALJ's decision focuses to a great extent upon plaintiff's mental impairments or her addictive behavior without tying his conclusions regarding her physical capacity to specific medical or nonmedical evidence. For instance, plaintiff asserts that there is no support for the conclusion that plaintiff can stand or walk for six hours of an eight-hour work day.

As noted by plaintiff, according to SSR 96-8p the RFC

assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." 1996 WL 374184 at *7.  In this case, plaintiff claims she has greater limitations upon her ability to stand, walk and sit than were found by the ALJ.  These limitations are supported by her treating physician and her descriptions of her daily activities.  The ALJ's rejection of Dr. Chillal's RFC assessment and the ALJ's view of plaintiff's activities of daily living do not support his conclusion that plaintiff retains the ability to stand or walk for six hours of an eight-hour work day.

Therefore, the court accepts this argument for reversing defendant's decisions to deny benefits in this case.

V.  CONCLUSION

The court shall reverse the decision of defendant to deny benefits because the ALJ did not properly consider the opinions of Dr. Chillal, did not properly conduct the analysis of plaintiff's credibility, and did not properly perform the RFC assessment for reasons discussed in this order.  Plaintiff initially did not ask for a remand for an immediate award of benefits, but did make such a request in her reply brief.  After a review of the record, we are not convinced that a remand for further consideration and possible fact-finding would be an exercise in futility.  Therefore, the court shall reject plaintiff's request for a remand for payment of benefits.  Instead, the court shall order that the denial of

20

benefits be reversed and that the case be remanded to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 20th day of October, 2008 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge